## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AXA EQUITABLE LIFE INSURANCE COMPANY,<br>      Plaintiff,<br><br>v.<br><br>SYLVIA DEIANA,<br>      Defendant. | 05CV10447 (SCR)<br><br>**MOTION FOR ORDER PERMITTING PLAINTIFF TO DEPOSIT MONTHLY INSURANCE BENEFITS INTO COURT REGISTRY**<br><br>**FILED ELECTRONICALLY** |

This lawsuit arises out of a dispute over Defendant's eligibility for disability insurance benefits pursuant to a disability insurance policy issued by Plaintiff, AXA Equitable Life Insurance Company (the "Equitable"). In its complaint, the Equitable seeks to rescind the policy and to recover the disability insurance benefits it has paid Defendant on the ground that Defendant made fraudulent and material misrepresentations about her mental health history in her application for the policy. Despite this litigation, the Equitable has continued to pay monthly disability benefits to Defendant. In order to protect itself from further financial loss arising out of Defendant's wrongful acts, the Equitable, pursuant to New York Civil Practice Law and Rules § 2701.2 ("CPLR"), as applied through Fed. R. Civ. P. 64, hereby moves this court for an order permitting it to deposit all future disability insurance payments which are claimed by Defendant into the court registry during the pendency of this action. The Equitable proposes that such deposits be made on a monthly basis until this court determines the parties' respective rights under the disability policy. The Equitable submits the attached memorandum of law in support of this motion.


Dated: May 10, 2007
Hartford, CT

PLAINTIFF,
AXA EQUITABLE LIFE INSURANCE
COMPANY


/s/ Mark K. Ostrowski
Mark K. Ostrowski (MO 2515)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
(860) 251-5634 (telephone)
(860) 251-5216 (facsimile)
Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that, on May 10, 2007, a copy of the foregoing Motion for Order Permitting Plaintiff to Deposit Monthly Insurance Benefits into Court Registry was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Mark K. Ostrowski
Mark K. Ostrowski

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AXA EQUITABLE LIFE INSURANCE COMPANY,<br>          Plaintiff,<br><br>v.<br><br>SYLVIA DEIANA,<br>          Defendant. | 05CV10447 (SCR)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER PERMITTING PLAINTIFF TO DEPOSIT MONTHLY INSURANCE BENEFITS INTO COURT REGISTRY**<br><br>**FILED ELECTRONICALLY** |

SHIPMAN & GOODWIN, LLP
One Constitution Plaza
Hartford, CT 06103
860-251-5634
Mark K. Ostrowski (M02515)
mostrowski@goodwin.com

## <u>Table of Contents</u>

INTRODUCTION ......................................................................................................1.

FACTUAL BACKGROUND........................................................................................1.

LEGAL ARGUMENT.................................................................................................3.

CONCLUSION............................................................................................................9.

## <u>Table of Authorities</u>

Rules:

New York Civil Practice Law and Rules § 2701 ................................................. 1-5, 7

Federal Rule of Civil Procedure 64 ......................................................................1

Cases:

*Lade v. Levitt,* 33 A.D. 2d 956, 306 N.Y.S. 2d 704 (N.Y. App. Div. 1970)....................................3

*Werner v. Werner, et al.,* 70 Misc. 2d 1051, 334 N.Y.S. 2d 966 (N.Y. App. Div. 1972) ...............3

*Wien & Malkin, L.L.P. v. Wichman,* 255 A.D. 2d 244, 680 N.Y.S. 2d 250

(N.Y. App. Div. 1998) ..................................................................................... 3-5

*Conforti v. Goradia, et al.,* 234 A.D. 2d 237, 651 N.Y.S. 2d 506 (N.Y. App. Div. 1996).......... 3-5

*Borders Electronic Co., Inc., et al. v. Whirlpool Corp., et al.,* 531 F. Supp. 125

(S.D.N.Y. 1982) ................................................................................................5

*Wagener v. Vonant, et al.,* No. 83CV8443 (MJL), 1985 U.S. Dist. LEXIS 15760

(S.D. N. Y. Sept. 20, 1985)................................................................................5

*Aguilar, et al. v. U.S. Life Ins. Co. in the City of N.Y.,* 162 A.D. 2d 209, 556 N.Y.S. 2d 584

(1962)................................................................................................................6

## INTRODUCTION

This lawsuit arises out of a dispute over Defendant's eligibility for disability insurance benefits pursuant to a disability insurance policy issued by Plaintiff, AXA Equitable Life Insurance Company (the "Equitable"). In its complaint, the Equitable seeks to rescind the policy and to recover the disability insurance benefits it has paid Defendant on the ground that Defendant made fraudulent and material misrepresentations about her health history in her application for the policy. Despite this litigation, the Equitable has continued to pay monthly disability benefits to Defendant. In order to protect itself from further financial loss arising out of Defendant's wrongful acts, the Equitable, pursuant to New York Civil Practice Law and Rules § 2701.2 ("CPLR"), as applied through Fed. R. Civ. P. 64, hereby moves this court for an order permitting it to deposit all future disability insurance payments which are claimed by Defendant into the court registry during the pendency of this action. The Equitable proposes that such deposits be made on a monthly basis until this court determines the parties' respective rights under the disability policy.

## FACTUAL BACKGROUND

The facts of this case are simple and straightforward. Defendant applied for a disability insurance policy with the Equitable in July 1992. On the application form, she indicated that she had never received medical treatment for or had any known indication of any emotional, psychological, or mental disease or disorder. (A true and accurate copy of Defendant's Application for Insurance is attached hereto as Exhibit A.) She also indicated that she had not been hospitalized or been diagnosed with any illness or injury during the period July 14, 1987 through July 14, 1992. Id. Notwithstanding her negative answers on her application, the unrefuted evidence shows that Defendant has a substantial history of mental illness, including

attempted suicide, which predated her application for the policy but which was not disclosed to the Equitable. Specifically, Defendant's medical records show that she had been a psychiatric inpatient at White Plains Hospital Center from March 6, 1991 through March 14, 1991, where she was diagnosed with Major Affective Disorder and Bipolar Disorder.

Likewise, it was also learned that in the 1980's, Defendant attempted suicide and suffered from depression, both conditions for which she had psychiatric care and treatment. The Equitable would not have issued the disability policy to Defendant had it known of this significant mental health history.

Because Defendant lied about her past medical history on the application for the policy, the Equitable is entitled to rescind the policy. If the policy is rescinded, Defendant will be required to return any disability benefits previously paid to her. However, it is likely that Defendant will not have the money to return to the Equitable. Therefore, to protect itself from additional financial loss due to Defendant's wrongful acts, the Equitable has filed the present motion.

## LEGAL ARGUMENT

Pursuant to CPLR § 2701.2, the Equitable should be allowed to protect itself from further financial loss due to Defendant's wrongful acts by depositing all future monthly insurance benefits into the court registry pending resolution of this action. CPLR § 2701.2 provides:

> The court, upon motion or its own initiative, with such notice as it deems proper, may order personal property capable of delivery which is the subject of the action, paid into court . . . if:
>
> 2. a party has such property in his possession, custody or control and it belongs or is due to another party, where special circumstances make it desirable that payment or delivery to such other party should be withheld.

New York courts have exercised the discretion conferred by § 2701 in a variety of circumstances. Most often, courts invoke § 2701 to prevent a future judgment from being worthless. See Lade v. Levitt, 33 A.D. 2d 956, 957, 306 N.Y.S. 2d. 704, 707 (N.Y. App. Div. 1970) (ordering Comptroller to pay death benefits to the court "in order to prevent any judgment . . . from being worthless"); Werner v. Werner, et al., 70 Misc. 2d 1051, 1053, 334 N.Y.S. 2d 966, 968 (N.Y. App. Div. 1972) ("Pending the outcome of the action, subdivision 2 of CPLR 2701 should be invoked in order to prevent any judgment granted herein from being worthless."). Here, if the Equitable is successful, it will obtain rescission of the policy as well as a judgment requiring Defendant to return all prior payments made under the policy. Such a judgment would likely be worthless if the monies are not held in the court registry, as Defendant would spend the benefits that are being paid to her each month and have no money to satisfy any future judgment. Section 2701 has also been used to preserve severance payments due to a Defendant who had been sued by his former employer for misappropriation of trade secrets, unfair competition and breach of contract. See Wien & Malkin, L.L.P. v. Wichman, 255 A.D. 2d 244, 244, 680 N.Y.S. 2d 250, 250-51 (N.Y. App. Div. 1998). In Wien, the trial court exercised its discretion under § 2701 and ordered the plaintiff to deposit into the court severance payments to which the Defendant would be entitled if he prevailed in the underlying action. Id. Affirming the trial court, the Appellate Division noted that by allowing the plaintiff to deposit the severance payments in the court, the court provided an alternative to the plaintiff's previous decision to simply withhold payment. Id. at 244, 680 N.Y.S. 2d at 251. Courts have also invoked § 2701 to preserve accrued rental payments in the context of landlord-tenant disputes. See Conforti v. Goradia, et al., 234

A.D. 2d 237, 237-38, 651 N.Y.S. 2d 506, 507-08 (N.Y. App. Div. 1996). In Conforti, the plaintiff sought a declaration with regard to the plaintiff's right to renew the lease of a rent-controlled apartment. Id. at 237-38, 651 N.Y.S. 2d at 507-08.  In connection with its order transferring the case to the Civil Court for trial, the Supreme Court directed the plaintiff to pay accrued rent in the amount of $11,079.90 into the court.  Id. at 237, 651 N.Y.S. 2d at 507.  The Appellate Division affirmed, holding that the court properly exercised its discretion by "directing that rent due to Defendants be paid into court as special circumstances ma[d]e it desirable that it should not be paid to them." Id. at 238, 651 N.Y.S. 2d at 508.  Both the Wien and Conforti courts commented that the court's discretion to order such deposits stems from "the inherent plenary power [of the Supreme Court] to fashion any remedy necessary for the proper administration of justice." Wien, 255 A.D. 2d at 244, 680 N.Y.S. 2d at 251; Conforti, 234 A.D. 2d at 238, 651 N.Y.S. 2d at 508.

Under the circumstances of the instant case, this court should permit the Equitable to deposit in the court registry insurance payments that are or may become due to the Defendant during the pendency of this action.  First, the circumstances of this case satisfy the minimal requirements of § 2701.2.  The Equitable is in possession of personal property, i.e., insurance benefits, the entitlement to which is the subject of this action. And, while those benefits may otherwise be due to Defendant, the circumstances of this case warrant that they be withheld during the pendency of this action, in that those benefits will not be due to Defendant if rescission is granted.  Note that the Equitable makes this request pursuant to sub-division 2 of § 2701.  Courts have denied such requests under sub-division 1 of § 2701, where the movant failed to demonstrate that the

entity in possession of the property was the trustee of that property. See Borders
Electronic Co., Inc., et al. v. Whirlpool Corp., et al., 531 F. Supp. 125, 127 (S.D.N.Y.
1982); Wagener v. Vonant, et al., No. 83CV8443 (MJL), 1985 U.S. Dist. LEXIS 15760,
at * 8-9 (S.D.N.Y. Sept. 20, 1985) (attached as Exhibit B). There is no such requirement
under sub-division 2. Moreover, unlike the movant in Borders Electronic Co., the
Equitable does not seek to compel Defendant to deposit property currently in her
possession; nor does the Equitable contest that Defendant is or will be due disability
insurance payments prior to the resolution of this case. Comp. Borders Electronic Co.,
531 F. Supp. at 127. Rather, the Equitable contends that, given the special circumstances
of this case, an order directing the Equitable to pay into the court property in its
possession is appropriate under sub-division 2 of § 2701.

Second, if the court does not permit the Equitable to deposit all future monthly
benefits into the court registry, Defendant will likely dissipate those funds, thereby,
defeating the Equitable's ability to mitigate its already extensive losses. See Borders
Electronic Co., 531 F. Supp. at 128. Therefore, as was the case in Wien and Conforti, it
is prudent for the court to preserve the property that is the subject of this lawsuit by
directing that all future benefits be paid into the court. Comp. Borders Electronic Co.,
531 F. Supp. at 128 (equitable considerations did not warrant order under § 2107 because
movant failed to show a future judgment may be rendered worthless unless monies were
deposited in the court).

Third, the undisputed facts demonstrate that the Equitable is substantially likely to
prevail at trial. The crux of the Equitable's claim is that Defendant made fraudulent and
material misrepresentations in her July 1992 application for the disability policy at issue.

Defendant now admits that her application contained misrepresentations in the following respects:

(a)     The Defendant represented in her July 1992 application that she had never been treated for or had any known indication of emotional, psychological, mental or nervous system disease or disorder when, in fact, she had been treated for mental illness and suicidal activity beginning in 1984, including the use of Valium, sleeping pills and anti-depressant medications.

(b)     She represented in her July 1992 application that she had never been a patient in a hospital, clinic or sanitarium or other medical facility within the previous five years when, in fact, she had been an inpatient at White Plains Hospital Center from March 6, 1991 through March 14, 1991 and was diagnosed with Major Affective Disorder and Bipolar Disorder.

(c)     She represented in her July 1992 application that she had not had any illness within the previous five years when, in fact, she had treated for mental illness and suicidal activity beginning in 1984, including the use of Valium, sleeping pills and antidepressant medications; had been an inpatient at White Plains Hospital Center from March 6, 1991 through March 14, 1991; and was diagnosed with Major Affective Disorder and Bipolar Disorder.

At trial, the Equitable will present evidence sufficient to demonstrate that the foregoing misrepresentations were both material and fraudulent.  With respect to materiality, the Equitable intends to offer evidence establishing that (1) Defendant's misrepresentations substantially thwarted the purpose for which the information was demanded and (2) absent Defendant's misrepresentations the Equitable would not have approved her application.  See Aguilar, et al. v. U.S. Life Ins. Co. in the City of N.Y., 162 A.D. 2d 209, 210-11, 556 N.Y.S. 2d 584, 585 (N.Y. App. Div. 1990).  With respect to fraud, Defendant's sole defense in this case is her contention that she lacked fraudulent intent because (1) the agent completed her application and (2) the agent instructed her to omit certain information requested in the application.  Defendant's credibility is undermined by several key facts.  First, the agent denies that he filled out Defendant's application.  Second, the agent denies that he ever instructed Defendant to omit information.  Third, the Equitable intends to introduce evidence of Defendant's previous

conviction for insurance fraud, which is relevant to the Defendant's awareness that such misrepresentations were impermissible. (<u>See</u> Deiana Dep. 84-91, Aug. 31, 2006) (attached hereto as Exhibit C). Fourth, the Equitable will introduce substantial evidence of Defendant's lack of candor throughout the claim process.

By exercising its discretion pursuant to § 2701, the court can protect the important interests of both parties to this action by preserving the corpus of the funds until this matter can be properly resolved.

## CONCLUSION

WHEREFORE, plaintiff, AXA Equitable Life Insurance Company, respectfully moves this Court for an order directing that all insurance benefits, which are or may become due to the Defendant, be paid into the court registry during the pendency of this action.

Dated: May 10, 2007
Hartford, CT

PLAINTIFF,
AXA EQUITABLE LIFE INSURANCE
COMPANY

/s/ Mark K. Ostrowski
Mark K. Ostrowski (MO 2515)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
(860) 251-5634 (telephone)
(860) 251-5216 (facsimile)
Its Attorneys

7

## CERTIFICATE OF SERVICE

I hereby certify that, on May 10, 2007, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Order Permitting Plaintiff to Deposit Monthly Insurance Benefits into Court Registry was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Mark K. Ostrowski
Mark K. Ostrowski

462417

# EXHIBIT A

APPLICATION PART 1 FOR NON-CANCELLABLE DISABILITY INSURANCE TO

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
## NEW YORK, N.Y.

### 1. PROPOSED INSURED

a. Print name as it is to appear on the policy:
SYLVIA DEIANA

b. ☐ Mr.  ☐ Miss  ☐ Doctor     c. ☐ Male
☑ Mrs.  ☐ Ms.  ☐ Other Title       ☑ Female

d. Birth date              e. Age nearest
Month/Day/Year 7/11/62     birthday  30

f. Place of Birth (state)  NY

g. Citizenship (country)  US

h. Social Security or Tax Number 092 44 5701

i. Residence City, State, Zip Pleasantville, NY 10570

### 2. OCCUPATION

a. Current Occupation(s) Advisory Programmer Analyst

b. Current Duties Computer Programming

c. Nature of Business Personnel - Re Locating

d. Type of organization: ☐ S Corporation  ☑ Corporation
☐ Sole Proprietorship  ☐ Partnership  ☐ Other

e. Are you now working on a full-time basis? ☑ Yes  ☐ No

f. Do you intend to change your occupation and/or employer
within the next year?                    ☐ Yes  ☑ No

### 3. EARNINGS

a. Source of your gross earned income after business
expenses?
                          Current         Actual Prior
                       Annual Rate      Calendar Year

1. Current primary occupation? $ 60,000  $ 60,000

2. Any other occupations?     $ —        $ —

b. What contributions are made on your behalf to pension
funds or profit sharing plans which will not continue in the
event of disability?          $ 0        $ 0

c. What is your NET unearned income (from investments,
rents, dividends)?            $ —        $ —

d. What part of your earned income would continue during
disability? (show amt.) $ 0  For how long? ____ mos.

e. Does your total net worth exceed
$2,000,000? (Omit personal residence)  ☐ Yes  ☑ No
If yes, in Details Section, show cash, savings, stocks and
bonds, real estate, business interests and value of vested
pension fund or profit sharing plan, etc.

**DETAILS SECTION PROVIDED ON PAGES 2 & 3**

### 4. DISABILITY INCOME INSURANCE APPLIED FOR

a. Monthly Income Amount: DI $ 3,400  Other _____ *
* Describe other coverage(s)  —
and complete appropriate Supplement(s)

b. Will coverage be paid for by employer? ☐ Yes  ☑ No
If "yes" how much?  ____ %

c. Occupational Class:  4A  Plan P65

d. Elimination Period:  60 days

e. Optional Benefits
COLA (choose one)   ☐ 4-6% CPI   ☐ 6-8% CPI
☐ Residual 65/W or   ☐ Proportionate Loss of Income
☐ Guaranteed Insurability Aggregate Amount $ _____
☐ Soc. Sec. Supp. E.P. _____ days $/mo _____
☐ Fixed Income E.P. _____ Term _____ $/mo _____
☐ Other Optional Benefits:

### 5. ADDITIONAL INFORMATION

a. Will the insurance applied for replace any existing
insurance? If yes, indicate in 6 below   ☑ Yes  ☐ No
When is the next premium due date for this existing
insurance?

b. What is the premium payment mode? Systematic Monthly

c. Do you now have pending an application, or do you
intend to apply within the next six months, for any other
disability, life or medical insurance? (If Yes, state companies
and amounts in Details Section.)          ☐ Yes  ☑ No

d. Have you ever had an application for any insurance,
or for renewal or reinstatement of any insurance,
declined, postponed, rated-up in premium or otherwise
modified, or a policy rescinded? (State companies and full
details in Details Section.)              ☐ Yes  ☑ No

e. Have you ever applied for or received any type of income
or premium waiver benefit or worker's compensation
award as a result of disability? (State payer and cause in
Details Section.)                         ☐ Yes  ☑ No

f. Have you smoked a cigarette in the past 12 months?
                                          ☐ Yes  ☑ No

g. Have you ever had a driver's license suspended or
revoked or, within the last three years, been convicted of
two or more moving violations or driving under the
influence of alcohol or drugs?
(if yes, complete Driving questionaire)   ☐ Yes  ☐ No

h. Did you within the past year, or do you intend to travel
or reside outside the United States?      ☐ Yes  ☑ No

### 6. OTHER INSURANCE

Describe all Disability Income and Overhead Expense coverage in force. Include disability benefits in life coverage, pension, union welfare, state disability, civil service, employer or employee benefit plans for franchise or association plans. If none, write "none."

| Company or Organization | Type of Coverage* | Policy # | Amount of Monthly Income | Maximum Benefit Period | | To Be Replaced | | Employer Funded | | Fully Offset By Social Security | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Acc | Sick | Yes | No | Yes | No | Yes | No |
| 1. Monarch Life | I | 2037028 | 2,000 | 65 | 65 | ✓ | | | ✓ | | ✓ |
| 2. | | | | | | | | | | | |
| 3. | | | | | | | | | | | |

*Key  I—Individual  G—Group  A—Association  E—Employer Sick Pay or Union  BOE—Business Overhead Expense

**APPLICATION PART II**
Case 7:05-cv-10447-GAY   Document 15   Filed 05/10/07   Page 17 of 35
(Complete questions 1-5 only if application is on non-medical basis.)

**1. PROPOSED INSURED**

a. Height: 5 ft. 4 in.     Weight: 135 lbs.     b. Have you had a weight change of more than 10 pounds in the last 12 months?    ☐ Yes  ☑ No

c. Name and address of your personal physician: (If none, so state)

Dr. Christine Fusillo - 53 Rose Hill Ave, Tarrytown, N.Y.

d. Date and reason last consulted if within the last 5 years: Feb.92  Asthma check-up
No complications

e. What treatment was given or recommended? - use of inhaler

**2.**

Are you now under observation or taking treatment? _____    ☐ Yes  ☑ No

**3.**

Have you ever been treated for or had any known indication of: (Circle the applicable items)
a. Diabetes, tumor, cancer, glandular or skin disease or disorder?    ☐ Yes  ☑ No
b. Emotional, psychological, mental or nervous system disease or disorder; convulsions or epilepsy?    ☐ Yes  ☑ No
c. Chest pain, high blood pressure, heart attack, stroke or any other disease or disorder of the heart or blood vessels?    ☐ Yes  ☑ No
d. Any disease or disorder of the respiratory or digestive systems, including hernia, ulcer, or liver disorder?    ☐ Yes  ☑ No
e. Any disease or disorder of the urinary or reproductive systems? Are you now pregnant?    ☐ Yes  ☑ No
f. Any disease or disorder of the blood or lymphatic systems?    ☐ Yes  ☑ No
g. Any disease or disorder of the muscles or bones, including the back, neck, spine or joints?    ☐ Yes  ☑ No
h. Any disease or disorder of eyes, ears, nose, throat or speech?    ☐ Yes  ☑ No

**4.**

Have you within the last 10 years:
a. Been treated for or advised to have treatment for a sexually transmitted disease, including Gonorrhea, Syphilis, Herpes Simplex II, or Hepatitis B?    ☐ Yes  ☑ No
b. Been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids-Related Complex (ARC)?    ☐ Yes  ☑ No
c. Been treated by a member of the medical profession for AIDS or ARC?    ☐ Yes  ☑ No
d. Used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics except as prescribed by a physician (other than yourself, if you are a physician)?    ☐ Yes  ☑ No
e. Received counseling or treatment regarding the use of alcohol or drugs?    ☐ Yes  ☑ No

**5.**

Other than above, have you within the past 5 years:
a. Consulted or been examined or treated by any physician or practitioner, or visted a psychiatrist, psychologist, psychiatric social worker, psychotherapist or counselor for any reason?    ☐ Yes  ☐ No
b. Been a patient in a hospital, clinic, sanatorium, or other medical facility? Had any diagnostic test?    ☐ Yes  ☑ No
c. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?    ☐ Yes  ☑ No
d. Had any illness, injury, or surgery? Have you any deformity lameness or amputation?    ☐ Yes  ☑ No

**6. DETAILS**

Give details of Yes answers for parts 1 & 2. Include Question Number, Diagnosis and Treatment, Results, Dates and Duration, Names and addresses of all attending physicians and medical facilities, where applicable. Continuation sheet on page 3 provided for additional details:

_____
_____
_____
_____
_____
_____
_____
_____

**CONTINUATION SHEET USED**    ☐ Yes  ☑ NO

1-88 SA  CAT. #123217

CONTINUATION SHEET

**PROPOSED INSURED**

Print name as it is to appear on the policy:                    Birth date   Month/Day/Year

**7. DETAILS**

I have received from ~~Robert Frankel~~ , a
completed required Outline of Coverage with
Application No. ~~D431627~~ for Equitable's Disability
Income Policy Form DI 131.

Dated at ~~Pleasantville, NY~~ on ~~7/14/92~~.

~~Selwin J Duana~~
Signature of Proposed Insured

OC/DI 131 A

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

## AMENDMENT TO THE DISABILITY INCOME APPLICATION

NOTE: This form must be completed with all New York Applications.

D 431627

Application No.

The New York State Insurance Department does not consider an HIV
(Human Immunodeficiency Virus - AIDS) test as a diagnostic test.
Please bear this in mind as you complete Part 11 of this application.


Signature of Proposed Insured

Date 7/14/92

Signature of Owner, if other
than the proposed Insured

Date

Signature of Agent

Date 7/14/92

AS 89-02

# EXHIBIT B

LEXSEE 1985 U.S. DIST. LEXIS 15760

**ALICE WAGENER, Plaintiff, v. WILLIAM E. CONANT, IRENE CONANT JAQUES, et al., Defendants**

**No. 83 Civ. 8443 (MJL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1985 U.S. Dist. LEXIS 15760*

**September 20, 1985**

**COUNSEL:** [*1]

JOSEPH M. BURKE, ESQ., Attorney for Plaintiff, 747 Third Avenue, New York, New York 10017

KENT, HAZZARD, JAEGER, FREEMAN, GREER & WILSON, Attorneys for the Conant Defendants, 199 Main Street, White Plains, New York 10601

RAYMOND G. KUNTZ, P. C., Attorney for Defendant Stewart Dickert, hunting Ridge Mall, Bedford Village, New York 10506

**OPINION BY:**

LOWE

**OPINION:**

MEMORANDUM OPINION AND ORDER

MARY JOHNSON LOWE, D. J.

This is an action for breach of contract and fraud. Jurisdiction is based on diversity of citizenship. Presently before the Court are various motions. For the reasons stated below we deny dismissal as against any of the defendants, grant defendant Dickert's motion for deliverance of property to the Court, deny the motion for an order directing the plaintiff to deliver property to the Court, and grant leave to file an amended complaint.

Background

The plaintiff, Alice Wagener ("Wagener") was a lifelong friend and living companion of Edith Conant ("Conant"). Defendants William Conant, Irene Conant Jaques and Ruth Conant Panza ("the Conant Defendants") are Conant's nephew and nieces respectively. Defendant C. Steward Dickert, Esq. ("Dickert") is an attorney who acted as an [*2] escrow agent for transactions involved in this lawsuit.

In 1940 Conant purchased an undeveloped property in Pound Ridge, New York ("the Pound Ridge property" or "Pound Ridge"), and had a house erected on it. Wagener alleges that from 1940 until 1968 she and Conant lived in the house together, sharing all expenses equally, including the expenses for the purchase of the land, design, construction and maintenance of the house, and the payment of all taxes and the mortgage debt.

In 1968 Conant died. By will, Conant granted a life estate in the Pound Ridge property to WAgener with the remainder in fee simple absolute to the Conant defendants as tenants in common. The will was duly admitted to final probate by the Surrogate's Court, Westchester County. n1 From 1968 until 1981 Wagener lived in Pound Ridge and paid all taxes, maintenance and other expenses incident to the property.

n1 The Court has examined the complaint and finds that the exercise of federal jurisdiction

in this matter will not interfere with the state probate matter.

In 1981, Wagener decided to move to Charleston, South Carolina. Wagener and the Conant defendants, as the remaindermen, began negotiating the appropriate [*3] disposition of Pound Ridge. By October of that year they mutually agreed that Pound Ridge should be sold, however, no agreement was reached as to the disposition of the sale proceeds. Accordingly, they jointly executed a brokerage agreement. In March of 1982 the property was sold for $67,000 net cash and a $90,000 note secured by a mortgage on Pound Ridge.

At the closing of the sale Wagener and the Conant defendants reached an informal agreement as to the appropriate distribution of the sale proceeds. The note and mortgage were to be sold to the highest bidder and the proceeds along with the $67,000 were to be used to purchase municipal tax-free bonds. Ten years of interest coupons from the bonds were to be delivered to Wagener and the Conant defendants were to receive the bonds. Defendant Dickert, an attorney present at the sale was to act as an escrow agent holding the $67,000 for not greater than 60 days pending completion of a more formal agreement. The agreement was reduced to a rough handwritten "Memorandum of Understanding."

Apparently, the parties intended to have a formal agreement drafted by an attorney, however, attempts to reach such an agreement were fruitless. The note [*4] (with the mortgage) was never sold and in 1984 the purchasers of Pound Ridge discharged the note and mortgage by delivering $91,502.10 to Wagener. Wagener alleges that this money has remained untouched in a separate interest bearing bank account in Bankers Trust of Charleston, South Carolina. The other proceeds are still in the control of Dickert.

Plaintiff alleges various causes of action sounding in fraud, conversion, breach of contract, and breach of fiduciary duty. She seeks an accounting, specific performance, damages, costs and fees.

The Conant defendants counterclaim alleging that certain bequests in the Will of Edith Conant abated due to the insufficiency of Conant's estate. The Conant defendants allege that at the Pound Ridge closing an agreement was reached by which these bequests would be paid out of the sale proceeds and Wagener would receive $10,000 outright to compensate her for the loss of her life

interest. They claim that the $10,000 was paid to Wagener but that the bequests were never satisfied. Therefore the Conant defendants seek repayment of the $10,000.

They also allege that the personal property within Pound Ridge belonged to them and seek to recover it or [*5] its value -- which they estimate at $75,000.

Defendant Dickert moves for an order directing that he deliver the property which he holds in escrow to the Court, and for dismissal of the complaint as to him. Plaintiff Wagener moves for leave to file an amended complaint and for production of documents. The Conant defendants seek an order directing Wagener to deliver property to the Court, and for leave to file an amended answer and further counterclaims.

Discussion

A. Defendant Dickert's motion to pay property into Court and for dismissal.

Defendant Dickert seeks to pay the money which he holds into Court, thus discharging his escrow. Once the money has been deposited in Court, he argues, the complaint be dismissed as to him. He argues that this should be accomplished by an order under New York Civil Practice Laws and Rules ("CPLR") §2701, as incorporated into *Fed. R. Civ. P. 64.*

Section 2701 is a prejudgment remedy, whereas Dickert's motion essentially sounds in interpleader. Interpleader in federal courts is governed by the federal rule. *28 U.S.C. §1334* and *Fed.R.Civ.P. 22(1)* allow for actions or counterclaims "in the nature of interpleader." *28 U.S.C. §1335;* [*6] see 7 Wright & Miller, Fed. Practice and Procedure §1708 (1972). Accordingly, we shall treat Dickerts motion as one for interpleader.

There is no dispute that Dickert holds that fund as a trustee for the other parties and claims no personal right to it. Since the escrow appears to have expired some time ago, we believe that payment of the fund into the Court is appropriate. Accordingly, Dickert is directed to pay into the Court the property which he holds in escrow for the other parties and to file and serve an accounting. 7 Wright & Miller, Fed. Practice and Procedure, §1714 (1972). The Clerk of the Court shall hold the fund in the regular course to abide the outcome of this action.

Turning to Dickert's motion requesting that he be dismissed as a party to this action once he has deposited the fund, we find his argument unpersuasive. When the stakeholder retains any interest in the litigation an order of discharge is not appropriate. *Bankers Trust Co. v. Crawford, 559 F. Supp. 1359, 1364 (N.D.N.Y. 1983)*. In the case at bar, Wagener alleges wrongdoing on the part of Dickert. We intend to allow amendment of the complaint. n2 If Dickert believes that the amended complaint [*7] does not state a claim against him, he may at that time move to dismiss.

n2 Defendant Dickert strongly opposes the motion to amend. See Dickert affidavit sworn December 5, 1985 [sic] and docketed December 10, 1984. His primary argument in opposition appears to be that some of the factual allegations in the affidavit in support of the motion to amend are false and presumably these "false" statements would be the basis of false allegations in the amended complaint.

This Court cannot judge the truth of the affidavits at this stage and of course is in no position to judge the truth of the assertions to be made in a yet to be filed amended complaint. If, at the appropriate juncture, it appears that the affidavit and amended complaint are untrue and filed in bad faith the Court will not hesitate to impose appropriate sanctions. Cf., *Fed. R. Civ. P. 11*.

B. Conant defendants' motion for an order directing Wagener to deliver property to the Court and for leave to file and amended answer

The Conant defendants seek an order directing WAgener to deposit the money which she holds into the Court. The state's law in regard to the availability of such attachment-like prejudgment [*8] relief is incorporated into the federal law by *Fed. R. Civ. P. 64*. *Granny Goose Foods Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 436-37 n.10 (1974)*. The applicable New York Law is Civil Practice Laws and Rules ("CPLR") §2701 which states:

The court upon motion or on its own initiative, with such notice as it deems proper, may order personal property capable of delivery which is the subject of

the action, paid into court, or delivered to such person as it may direct, with such security as the court shall direct, and subject to its further direction if:

1. a party has such property in his possession, custody or control as trustee for another party or where it belongs or is due to another party; or

2. a party has such property in his possession, custody or control and it belongs or is due to another party, where special circumstances make it desirable that payment or delivery to such other party should be withheld; or

3. the ownership of such property will depend on the outcome of a pending action and no party is willing to accept possession or custody of it during the pendency of the action.

*NY CPLR §2701.*

The Conant defendants claim that Wagener is a trustee [*9] within the meaning of §2701(1), and therefore the prejudment relief is appropriate. Wagener argues that §2701(1) is wholly inapplicable n3 because she is not a trustee of the money, but rather claims a personal right to it. She points out that when a life estate is liquidated the life tenant is entitled to use of the proceeds for life. Cf., *Matter of Blauvelt, 131 N.Y. 249 (1892); In Re Hays' Will, 114 N.Y.S.2d 87, 91 (Surr. Ct. 1952)*. Whether the March, 1982 agreement altered the parties rights in the proceeds must be decided by this litigation. In order for the Conant defendants to prevail on a §2701 motion for prejudgment relief, they have the burden of "clearly establishing" that Wagener holds the money as a trustee. *Borders Electronics Co. Inc. v. Whirlpool Corp., 531 F. Supp. 125 (S.D.N.Y. 1982)* (Weinfeld, J.). In the case at bar there has been no such evidence. In fact, it appears that Wagener is far more than a mere trustee.

n3 The other subsections of §2701 are clearly inapplicable.

Moreover, there has been no evidence of bad faith. As noted before Wagener is holding the money in a

Case 7:05-cv-10447-GAY   Document 15   Filed 05/10/07   Page 25 of 35

Page 4
1985 U.S. Dist. LEXIS 15760, *9

separate interest bearing account. If after trial we conclude that she [*10] is not entitled to hold the money, she will, of course, be required to make an accounting.

The Conant defendants also seek leave to file an amended Answer. Wagener does not oppose the amendment, however, she points out that if her request for leave to file an amended complaint is granted a new answer must be filed anyway. Since we will grant leave to amend the complaint, the Conant defendants will file a new answer asserting their additional counterclaims at that time.

Wagener's motion to file an amended complaint

Wagener moves pursuant to *Fed. R. Civ. P. 15* for leave to file an amended complaint. Dickert opposes the motion, see, footnote of page 8 supra, however, in light of the liberal amendment policy of Rule 15 we believe that the amendment should be allowed. *Fed. R. Civ. P. 15(a); Gillespie v. U.S. Steel, 379 U.S. 148 (1954); Forman v. Davis, 371 U.S. 178 (1962).* After the amendment, the exact nature of the claims asserted against Dickert will become clear. Accordingly leave to file an amended

complaint is granted. n4

n4 Wagener also seeks certain documents from Dickert. Since the Court has ordered an accounting, Wagener's motion is moot, however, if these documents are relevant to the litigation in another context they may be discovered in accordance with the regular rules governing discovery.

[*11]

Conclusion

Defendant Dickert is to pay the property he holds in escrow into the Court. The Clerk of the Court is to hold the fund pending the outcome of this litigation. Dickert is to file and serve an accounting. Defendant Dickert's motion to dismiss is denied. The Conant defendants' motion for an order directing delivery of property to the Court is denied. Leave to file an amended complaint within twenty (20) days is granted.

It Is So Ordered.

# EXHIBIT C

SYLVIA DEIANA

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

. . . . . . . . . . . . . . . . . . . . X

AXA EQUITABLE LIFE INSURANCE

COMPANY,                                    ORIGINAL

                                   Plaintiff,

               -against-

SYLVIA DEIANA,

                                   Defendant.

. . . . . . . . . . . . . . . . . . X

                        2 William Street

                        White Plains, New York

                        August 31, 2006

                        10:35 a.m.

          DEPOSITION of SYLVIA DEIANA,

the Defendant herein, taken on behalf of the Plaintiff,

held pursuant to Notice, before a Notary Public of the

State of New York.




**LEGALINK**®

**A MERRILL COMMUNICATIONS COMPANY**

420 Lexington Ave
Suite 2108
New York, NY 10170

tel (212) 557-7400
tel (800) 325-3376
fax (212) 692-9171

www.merrillcorp.com

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

SYLVIA DEIANA

84

1        MR. STEINER:  My knowledge is that it no

2    longer exists and it is closed.  Where the

3    records are I don't know but it was a hospital

4    that was maintained by the Archdioceses.

5        Q    Now, we talked a little bit about the

6    false insurance claims that you filed while you were

7    working at Nestles.  Am I correct that you were

8    indicted for filing those false insurance claims?

9        A    What does that mean?

10       Q    You were charged criminally.

11       A    Yes.

12            MR. OSTROWSKI:  I'm going to ask the

13       Reporter to mark this as Exhibit 3.

14                        (Whereupon Plaintiff's Exhibit 3

15                        was received and marked for

16                        identification, as of this

17                        date.)

18       Q    Mrs. Deiana, I'm showing you what we have

19    marked as Plaintiff's Exhibit 3.  It is a Caption,

20    Supreme Court of the State of New York, County of

21    Westchester, the People of the State of New York

22    against Sylvia Angiolillo, also known as Sylvia

23    Riccio, also known as Sylvia Deiana.  Are you

24    familiar with this document?

25                        (Witness perusing.).

SYLVIA DEIANA

85

1       A    I don't think I have ever seen this.   No,
2   I'm not familiar with it.
3       Q    But it's fair to say that you were indeed
4   charged criminally for the activity that we have
5   discussed with respect to the false insurance
6   claims?
7       A    Correct.
8       Q    What was the outcome of those charges; do
9   you recall?
10      A    Yes.  I pleaded guilty.
11      Q    What did you plead guilty to; do you know?
12      A    No, I don't know; on the advice of an
13  attorney.
14      Q    And what was your sentence?
15      A    I didn't have one.  I pleaded guilty.  I
16  don't remember to what.  I pleaded guilty and it was
17  five years probation and restitution.
18      Q    And how much restitution did you have to
19  pay?
20      A    Somewhere around $30,000.
21      Q    Did you periodically have to report to a
22  probation officer?
23      A    I never met him.  I spoke to him on the
24  phone maybe three times.  That was it.  I don't even
25  remember his name, to be honest with you.

SYLVIA DEIANA

86

1   Q    Were there any conditions to your

2   probation?

3   A    I don't know what that was all about.  At

4   one time when I spoke to him I had said I just came

5   back, cause I was traveling on business, and he told

6   me that I should have let him know that.  I said, "I

7   apologize, I didn't know."  He said, "No big deal.

8   I'll give the okay if you need to travel on

9   business."  I don't know if that was a condition.

10  I'm assuming it was then.  I don't know.  I never

11  received any information from probation or anything.

12  I have no documentation on that.

13       Q    Were you arrested for these crimes?

14            MR. STEINER:  Objection, I'm not sure she

15       knows what arrested means.

16       Q    Who brought the charges against you?  Was

17  it the State of New York?

18            MR. STEINER:  Again, objection.

19            MR. OSTROWSKI:  Let me see if I can ask it

20       a different way.

21       Q    I presume you made a court appearance or

22  several court appearances with respect to the

23  indictment which we have marked as Plaintiff's

24  Exhibit 3?

25       A    Yes.

SYLVIA DEIANA

1     Q     Prior to the first appearance that you

2  made, how were you informed of the charges?

3     A     Through an attorney.

4     Q     Through an attorney?

5     A     Yes.

6     Q     Did the police ever come to your home or

7  your place of work?

8     A     No.

9     Q     Were you ever interviewed by the police

10 with respect to these claims?

11    A     No.

12    Q     Do you know what year it was that you were

13 indicted?

14    A     I think it was 1992 but I'm not sure.

15    Q     So it was after you had gone to work for

16 Prudential Financial; correct?

17    A     Yes, it was.

18    Q     Was Prudential Financial aware of these

19 charges?

20    A     No.

21    Q     Did they ask you why you had left Nestle?

22    A     I don't remember.

23    Q     Now, it is my understanding that you pled

24 guilty to Grand Larceny in the third degree.  Do you

25 know whether that is correct?

SYLVIA DEIANA

1  A  I'm sure it is.  I don't remember what I

2 pled guilty to but yes, I pled guilty.  To exactly

3 what I don't know.

4  Q  And did you make the restitution to

5 Nestle?

6  A  Yes, I did.

7  Q  Did you make it completely?

8  A  Yes, I did.

9  Q  Am I correct in understanding that a

10 Judgement in Order of Restitution was entered by the

11 Westchester County Court?

12  A  Yes.

13   MR. OSTROWSKI:  I'm going to ask the

14  Reporter to mark that.

15      (Whereupon Plaintiff's Exhibit 4

16      was received and marked for

17      identification, as of this

18      date.)

19  Q  I'm going to show you what we have marked

20 as Exhibit 4 and ask you if you recognize it.  This

21 is a document entitled Judgement in Order of

22 Restitution, captioned County Court, County of

23 Westchester, the State of New York, The People of

24 the State of New York versus Sylvia Angiolillo.

25  A  I don't remember seeing these.

SYLVIA DEIANA

1    Q    But it is fair to say that an Order of

2   Restitution was entered?

3    A    Yes.

4    Q    At some point in time did you go to Nestle

5   to see if you could reduce the amount of restitution

6   you had to pay?

7    A    Did I physically go there?

8    Q    Did you contact them?

9    A    Yes, I believe so.  I don't know if it was

10  a phone call or a letter, I don't remember.

11         MR. OSTROWSKI:  I'm going to ask the

12         Reporter to mark this as Exhibit 5.

13                    (Whereupon Plaintiff's Exhibit 5

14                    was received and marked for

15                    identification, as of this

16                    date.)

17    Q    Mrs. Deiana, I'm showing you what was

18  marked as Plaintiff's Exhibit 5, do you recognize

19  this letter?

20    A    Yes.

21    Q    How do you recognize it?

22    A    It is my signature.

23    Q    It is signed as Sylvia Angiolillo not

24  Deiana; is that correct?

25    A    That's correct.

SYLVIA DEIANA

90

1    Q    Why did you use that name?

2    A    Because that is what Nestle knew me as.

3    Q    What was the purpose of writing this

4    letter?

5    A    Let me read this again.

6              (Witness perusing.)

7              I'm assuming that this was to make a

8    settlement instead of doing payments.  To make one

9    bottom line settlement.

10   Q    This was in connection with the

11   restitution that you were paying Nestle?

12   A    Yes.

13   Q    If I'm correct in understanding the

14   charges that were brought against you by Nestle

15   related to fraudulent Insurance Claims between the

16   time period January 6, 1986 and November 1989; does

17   that time period sound correct?

18            MR. STEINER:  I'll object to the form of

19        the question.  If you understand, it you can

20        answer it.

21   A    Say that again.

22   Q    I'm correct in understanding that the

23   restitution that is referred to in your April 25,

24   1995 letter, which we have marked as Exhibit 5,

25   arises out of the indictment which we have marked as

SYLVIA DEIANA

91

1  Exhibit 3?

2      A    Yes.

3      Q    And the indictment arises out of false

4  insurance claims that you were filing under the

5  Nestle Health Benefit Plan?

6      A    Yes.

7      Q    And those false insurance claims were

8  filed during the calendar years 1986 through 1989;

9  is that correct?

10      A    I don't remember the exact date.

11      Q    Do you have a general idea as to the dates

12  in which those false insurance claims were filed?

13      A    That sounds about right what you said but

14  I don't know the exact dates.

15      Q    In looking at your letter of April 25,

16  1995.  In the second sentence you indicate "I was

17  extremely depressed and under psychiatric care at

18  the time and acted in an irrational, desperate way."

19  Do you see that language?

20      A    Yes.

21      Q    That is from your letter?

22      A    Yes, it is.

23      Q    If you could tell me, how were you

24  extremely depressed during that time period, the

25  time period of roughly '86 to '89?