UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AXA EQUITABLE LIFE INSURANCE
COMPANY,

                         Plaintiff,                    **MEMORANDUM DECISION**
                                                                         **AND ORDER**
      -against-

                                                                           05 Civ. 10447 (GAY)
SYLVIA DEIANA,

                         Defendant.
------------------------------------------------------------X

Plaintiff, AXA Equitable Life Insurance Company ("AXA"), seeks to rescind a disability income insurance policy issued to defendant, Sylvia Deiana, and to recover all benefits paid to defendant under the contract. Plaintiff claims that the defendant made several material and thus fraudulent misrepresentations about her health history on her insurance application. Presently before this Court is plaintiff's motion for partial summary judgment on the First Count of its Amended Complaint and on defendant's Fourth Affirmative Defense, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). Also before the Court is defendant's cross-motion that plaintiff's First Count—its fraud claim—is time-barred.[1] For the reasons that follow, plaintiff's motion is GRANTED in part and DENIED in part, and defendant's motion is GRANTED in full.

---

[1] Defendant asserts in her opposition to plaintiff's motion for partial summary judgment that (1) her statements were not fraudulent as a matter of law, and (2) assuming, arguendo, that they were fraudulent, plaintiff's claim of fraud is time-barred by the relevant statute of limitations. See Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Partial Sum. Judgment at 10-13 [hereinafter "Def.'s Opp."]. The Court construes defendant's latter argument as a cross-motion for partial summary judgment.

**I. BACKGROUND**

The following facts are gathered from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

On July 14, 1992, Deiana completed and executed an application for a disability income insurance policy with AXA. See Pl. Ex. 1, Verdi Aff., Ex. A, Application For Non-Cancellable [sic] Disability Insurance [hereinafter "Application"]. The Application required defendant to answer if she had "ever been treated for or had any known indication of" particular diseases. Application at Part II, ¶ 3. Defendant answered "no" to the following[2]:

-- [Having] "[e]motional, psychological, mental or nervous system disease or

disorder; convulsions or epilepsy," id. ¶ 3(b);

-- [Being] "a patient in a hospital, clinic, sanatorium, or other medical facility," id.

¶ 5(b); and

-- [Having] "within the past 5 years . . . [h]ad any illness, injury, or surgery," id. ¶ 5(d).

Defendant left unanswered ¶ 5(a), which asked whether defendant had, within the past five years, "[c]onsulted or been examined or treated by any physician or practitioner, or

---

[2] Defendant maintains that the insurance broker, Robert Frankel, who assisted her in completing the application, physically checked the boxes "yes" or "no." Def.'s Resp. to Pl.'s Statement Pursuant to Rule 56.1 ¶ 3 [hereinafter "Def. Rule 56.1 Resp."]. However, defendant supplied said answers to Frankel and was with him when he filled out the Application. Cert. of Scott J. Steiner [hereinafter "Steiner Cert."], Ex. 5, ¶¶ 3-5 [hereinafter "Def. Ex."].

visited a psychiatrist, psychologist, psychiatric social worker, psychotherapist or counselor for any reason." Id. ¶ 5(a).

>Above Deiana's signature, the Application contained the following provision:

>The undersigned certify [sic] that (1) the Proposed Insured has read, or had read to him or her, the completed application and (2) the Proposed Insured realizes that any false statement or misrepresentation in the completed application may result in loss of coverage under the policy. . . . The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief and are made to induce The Equitable[3] to enter into this Agreement and to issue any policy which may be issued upon this application.

Application at 4. Subsequently, AXA approved and issued to defendant a Disability Income Insurance Policy, numbered 92711188 ("Policy"), effective July 14, 1992. See Def. Ex. 1. The Policy states that:

>After this policy has been in force during your lifetime for two years from the Effective Date, misstatements (except for fraudulent misstatements) made by you in the application cannot be used to void this policy or to deny a claim for Loss incurred or Disability that starts after the end of such two year period.

Id. at 8. More than seven years elapsed thereafter without incident or claim.

In February 2000, defendant made a disability claim under the Policy resulting from pregnancy-related asthma. Amended Complaint ¶ 14. Plaintiff paid $46,240 in connection with this claim, and defendant returned to work on June 11, 2001. Id.; Pl. Ex. 1, Verdi Aff. ¶ 27; Def.'s Opp. at 4. In November 2002, defendant was diagnosed with a brain tumor and underwent surgery to remove the tumor, leaving defendant disabled. See Def. Exs. 3-4 (collection of medical records). Defendant timely notified plaintiff, through its third-party claims administrator, Disability Management Services,

---

[3] AXA was formerly known as the Equitable Life Assurance Society of the United States. Pl. Ex. 1, Verdi Aff. ¶ 4.

3

Inc. ("DMS"), that she intended to make a second claim for benefits under the Policy. Pl. Ex. 1, Verdi Aff. ¶ 11; Def. Ex. 2 (Letter from Amy M. Champigny, DMS, to Sylvia Deiana (Nov. 19, 2002)). Plaintiff paid defendant $224,400 in connection with this second claim. Pl.'s Statement of Undisputed Mat. Facts in Support of its Mot. for Partial Sum. Judgment ¶ 30 [hereinafter "Pl. Rule 56.1 Facts"]; Def. Rule 56.1 Resp. ¶ 30.

During its investigation of the second claim, plaintiff learned that defendant misrepresented certain information about her health and medical history on the Application. See Pl. Ex. 1, Verdi Aff. ¶ 12; Def. Rule 56.1 Resp. ¶ 14 (acknowledging the misrepresentations but denying they were fraudulent or material). Specifically, plaintiff learned that defendant had been admitted as an inpatient at White Plains Hospital Center just sixteen months before the date of the Application, at which time defendant was allegedly diagnosed with Major Affective Disorder and Bipolar Disorder. Pl. Ex. 1, Verdi Aff. ¶ 13.[4] Plaintiff contends that in the discharge notes from White Plains Hospital, a hospital official states that defendant's eight-day hospitalization was preceded by a period of "manic behavior" followed by "depressive ideation," including defendant's desire to kill herself. Id.

During its investigation, plaintiff also discovered from White Plains Hospital that defendant received outpatient psychiatric care prior to her hospitalization, and was treated with Valium, sleeping pills, and anti-depressants. Pl. Ex. 1, Verdi Aff. ¶ 14. The information further described that in 1985, shortly after said outpatient care, defendant

---

[4] In her deposition, defendant answered "yes" when asked if she would agree "that 16 months prior to . . . signing the [A]pplication] . . . [she was] admitted to White Plains Hospital Center." Pl. Ex. 4, Deiana Tr. at 63:7-12. She also testified that she had been a patient in a hospital within the five years prior to signing the Application. Id. at 63:21-24. She further admitted that her answer to ¶ 5(b) on the Application was "wrong." Id. at 63:25-64:1.

4

was treated by Dr. Kutallipin, who prescribed anti-depressive medication.  Id.  The hospital also noted that defendant made two suicide attempts in the mid-1980s.[5]  Id. ¶ 15.  Plaintiff also learned that Dr. Blumenfeld, a psychiatrist, treated defendant from March 16, 1991 through May 13, 1992—just two months before defendant signed the disability income insurance Application.  Id. ¶ 16.  See also Pl. Ex. 3, Blumenfeld Tr. at 26:15-27:3.  Dr. Blumenfeld diagnosed defendant with "major affective disorder, bipolar type" and prescribed for her Lithium, Prozac, and Restoil.  Id. at 30:7-15; 33:17-34:17.

Consequently, Deiana concedes that she misrepresented her medical history on the Application because, among other things, she falsely represented that:

> (a) she had never been treated for an emotional, psychological, mental or nervous system disease or disorder; (b) she had not been a patient in a hospital, clinic, sanatorium or other medical facility during the period from July 14, 1987 through July 14, 1992; and (c) she had not had any illness other than asthma during the period from July 14, 1987 through July 14, 1992.

Pl. Rule 56.1 Facts ¶ 25; Def. Rule 56.1 Resp. ¶ 25.  Because of defendant's misrepresentations, plaintiff ultimately rescinded defendant's Policy in December 2005.  Pl. Ex. 1, Verdi Aff. ¶ 23-24; Def. Rule 56.1 Resp. ¶ 32-33 (acknowledging the misrepresentations but denying they were fraudulent or material).  Plaintiff rescinded the Policy by letter and included a check in the amount of $13,718.41, which represented a refund of all premiums paid for under the insurance policy plus interest.  Pl. Ex. 1. Verdi Aff. ¶ 24.  Plaintiff then initiated this lawsuit on December 13, 2005.

---

[5] Defendant admits that she attempted suicide at least once during this time period.  Def. Rule 56.1 Resp. ¶ 21.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). When deciding a summary judgment motion, the Court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). Where a plaintiff fails to establish an essential element of its claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## III. DISCUSSION

The present action is before this Court on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1332(a)(1). Further, as the events giving rise to this partial motion for summary judgment occurred in Pleasantville, New York, the Court applies New York

6

law.  See New England Life Ins. Co. v. Taverna, No. 00 Civ. 2400, 2002 WL 718755, at *7 n.9 (S.D.N.Y. Mar. 1, 2002) (citing Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121 n.5 (2d Cir. 1998)) ("This matter is governed by New York insurance law because a federal court sitting in diversity jurisdiction generally applies the law of the forum state and the parties here both apply New York law in their papers.").

    A.  Fraud Claim

Plaintiff asserts that defendant's misstatements in her application for the Policy amount to material misrepresentations.  Thus, plaintiff claims that defendant committed fraud and said Policy should be rescinded.  Defendant contends that "plaintiff failed to make any showing that this action is timely, e.g., that it was brought within two years from the time the fraud was discovered, or could have been discovered with reasonable diligence."  Def.'s Opp. at 11.  Plaintiff asserts that it brought this action within two years of discovering defendant's fraud, therefore the action is timely.  Reply Brief in Support of Pl.'s Mot. for Partial Sum. Judgment at 5 [hereinafter "Pl.'s Reply"].

Assuming arguendo that defendant's misrepresentations were fraudulent,[6] in order to pursue a timely fraud claim, plaintiff must have commenced the present action either "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).  If

---

[6] In order to assert a prima facie fraud claim, plaintiff must show by clear and convincing evidence that: (1) defendant made a material misrepresentation or omission of facts; (2) it was made with knowledge of its falsity; (3) defendant intended to defraud; (4) plaintiff reasonably relied on the misrepresentation or omission; and (5) plaintiff thus suffered damages.  Reznor v. J. Artist Mgmt., Inc., 365 F. Supp. 2d 565, 575 (S.D.N.Y. 2005) (citing Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)).

the latter time period applies, § 203(g) requires that "the action must be commenced within two years after [the] actual or imputed discovery."  Id. § 203(g).

In the present action, both parties assert that the latter, two-year statute of limitations applies.  The determination of when said statute of limitations begins to run is an objective one.  Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983) (citation omitted).  The question of when "a reasonably diligent plaintiff could have discovered the fraud turns upon whether a person of ordinary intelligence possessed knowledge of the facts from which the fraud could be reasonably inferred."  Mun. High Income Fund, Inc. v. Goldman, Sachs & Co., No. 600012/06, 2008 WL 4938280, at *2 (N.Y. Sup. Ct. Oct. 30, 2008) (citation omitted).  In other words, the "'means of knowledge are the same thing in effect as knowledge itself.'"  Armstrong, 699 F.2d at 88 (quoting Wood v. Carpenter, 101 U.S. 135, 143 (1879)).  Thus, "in order to start the limitations period regarding discovery, a plaintiff need only be aware of enough operative facts so that, with reasonable diligence, it could have discovered the fraud."  Mun. High Income Fund, Inc., 2008 WL 4938280, at *3.

As such, the Court concludes that plaintiff did not file the present action within two years of when it could have discovered the alleged fraud.  At the very latest, plaintiff knew that defendant had not disclosed specific medical and mental health history in her Application as of January 23, 2003.  See Pl. Ex. 1, Verdi Aff. ¶ 20.  On that date, DMS[7] requested that defendant provide it with the names of doctors and/or counselors from whom she received treatment for her depression and stress since 1984.  Id.  At that

---

[7] Philip Verdi, senior claim consultant for DMS, was specifically assigned to investigate and adjudicate defendant's disability insurance claim on behalf of plaintiff.  See Pl. Ex. 1, Verdi Aff. ¶ 5.

time, plaintiff knew that defendant had not disclosed the names of said doctors, or any such treatment, when she filled out the Application in July of 1992. See id. ¶¶ 6, 17-18. Therefore, plaintiff "had the means of knowledge" of defendant's alleged fraud and could have discovered it as of January 23, 2003.  Thus, plaintiff's statute of limitations began at that time.  However, plaintiff did not file this action in fraud until December 13, 2005, almost eleven months past the expiration of the two-year statute of limitations. As such, plaintiff's claim in fraud is procedurally time-barred.  Accordingly, plaintiff's motion partial for summary judgment on said claim is DENIED.  Defendant's cross-motion for partial summary judgment on the same claim is GRANTED, dismissing the claim.

   B.  N.Y. Comp. Codes R. & Regs. tit. 11, §§ 51.1-.8 Claim

Next, defendant asserts in her Fourth Affirmative Defense that plaintiff failed to comply with New York regulations, specifically N.Y. Comp. Codes R. & Regs. tit. 11, §§ 51.1-.8,[8] when it failed to provide defendant with a "statement setting forth the advantages and disadvantages of the replacement Policy" at issue here.  Answer ¶ 24. Plaintiff seeks to dismiss this affirmative defense as a matter of law, asserting that said regulations do not apply to disability insurance policies, but rather to life insurance policies and annuities contracts.  Memo. of Law in Support of Pl.'s Mot. for Sum. Judgement at 15-18 [hereinafter "Pl.'s Memo"].

To interpret said regulations, the Court looks to the plain meaning of the language therein. See, e.g., In re William C., ___ N.Y.S.2d ___, 2009 N.Y. Slip Op.

---

[8] Defendant refers to the regulations as "11 NYCRR 51.4 et Seq. [sic]" in her Answer. Answer ¶ 24.  The Court notes that the specific regulation defendant uses to advance her position is § 51.4, however, the set of relevant regulations begins at § 51.1 and ends at § 51.8.  Thus, the Court refers to the set of regulations as "§§ 51.1-.8."

04232, 2009 WL 14777495, at *4 (App. Div. May 26, 2009); United States v. Williams, 558 F.3d 166, 170 (2d Cir. 2009).  Here, the regulations within §§ 51.1-.8 govern the replacement of life insurance policies and annuity contracts.  N.Y. Comp. Codes R. & Regs. tit. 11, §§ 51.1-.8.  Throughout the language of these regulations, only the terms "life insurance" and "annuity" are used.  Id.  Clearly absent from these regulations is any reference to disability insurance policies.  Furthermore, the next set of regulations—part 52 of Title 11 of the Codes, Rules and Regulations—specifically regulates disability income insurance.  Id. §§ 52.8, 52.60.  Because New York codifies disability insurance policies outside of part 51 of Title 11 of the Codes, Rules and Regulations, the Court concludes that said part does not regulate said policies.  Thus, defendant cannot raise an affirmative defense regarding her disability insurance policy pursuant to part 51 of Title 11 of the Codes, Rules and Regulations.   Accordingly, plaintiff's motion for partial summary judgment as to defendant's Fourth Affirmative Defense is GRANTED.

## IV.  CONCLUSION

For all of the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part, and defendant's cross-motion for partial summary judgment is GRANTED.  Accordingly, plaintiff is entitled to summary judgment with respect to defendant's Fourth Affirmative defense.  Summary judgment is denied with respect to plaintiff's motion on its claim of fraud.  Furthermore, in granting summary judgment with respect to defendant's cross-motion, the same fraud claim, plaintiff's First Count of its Amended Complaint, is DISMISSED.

The Court respectfully requests that the Clerk of the Court terminate the pending motion (Docket # 23).

Dated: July 2, 2009

White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.